JOHN C. ALMY, JUN., PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF CALIFORNIA.

A stamp duty imposed by the Legislature of California upon bills of lading for gold or silver, transported from that State to any port or place out of the State, is a tax on exports, and the law of the State unconstitutional and void.

THIS case was brought up by writ of error from the Court of Sessions for the city and county of San Francisco, in the State of California.

It was a constitutional question entirely, and is stated in the opinion of the court.

It was argued by *Mr. Blair* for the plaintiff in error, and submitted on a printed argument by *Mr. Benjamin* for the defendants.

*Mr. Blair* placed his opposition to the law upon two grounds, viz: 1st, that it imposed a tax upon commerce; 2d, that it amounted to a tax upon exports. As the opinion of the court notices only the latter point, the arguments of the counsel on both sides will be confined to that point. *Mr. Blair* said:

The law in question is also in violation of the provisions of the Constitution prohibiting the States from taxing exports; and the reasoning of the court in Brown's case is equally applicable to this branch of the case.

The payment required for the license to enable an importer to sell his imports was declared to be a tax on such imports; the court saying that it was "varying the form without varying the substance," and "treating a prohibition which is general as if it were confined to a particular mode of doing the forbidden thing."

There is even less room for controversy here, as to the application of the prohibition, than in that case. Every export is taxed by an impost on the paper which represents it, and which is indispensable.

Upon this point *Mr. Benjamin's* argument was as follows:

II. Is a stamp tax on a bill of lading a duty on exports?

It is said to be an indirect tax on exports, because the jury have found "that it is the usual and invariable custom to make and issue such bills of lading," &c., and "no vessel or steamer could practically fill up with, or obtain freight," unless the master executes one.

It is submitted that the argument proves quite too much, and if once admitted, would inaugurate a most dangerous system of construction, under which all right of taxation might be taken away from a State, thus leaving it shorn of powers which were never intended to be abandoned, and which are absolutely indispensable to its existence.

Drays and carts are necessary for loading merchandise on board of ships. "It is the usual and invariable custom to employ them." "No vessel could practically fill up without them." Cannot a State tax drays and carts?

In Mobile harbor, and many others, large vessels cannot load at all without the aid of lighters. Is the State of Alabama without power to tax lighters?

This law taxes policies of insurance, as well as bills of lading. Scarcely an argument will apply to one class of these papers that will not apply to the other. If everything that operates indirectly to enhance the cost of conveying merchandise is a duty on exports, what State tax could not, by ingenious-construction, be demonstrated to have that effect?

Nearly all the States tax foreign insurance agencies established within their borders; to pay their tax, rates of premium must be enhanced. Therefore, the ship-owner who pays this enhanced premium must charge a higher freight to the exporter, and it might hence be argued that the tax was unconstitutional. All such lines of argument are fanciful, dangerous, and subversive of the true meaning of the Constitution.

No man is by the law in question forbidden to ship his gold-dust. He may accompany it. He may send an agent to take care of it; he may make a valid parol contract for its delivery abroad, and take twenty witnesses, in order to retain the evidence of his contract; but, if he wishes to reduce it to writing

*Almy* v. *State of California.*

within the State, he must put his writing on a paper on which the State of California has levied a stamp tax.

It is worthy of notice, that in the draft of the Constitution offered in Convention by Mr. Patterson, of New Jersey, there was an express authority in Congress to raise revenue "by stamps on paper, vellum, or parchment."

1 Elliott's Debates, 175.

Yet, notwithstanding the fact that the attention of the Con vention was thus specially directed to this precise tax, no at tempt was made to inhibit its exercise by the States.

Suppose a State should, as a source of revenue, establish in it own favor a monopoly of the retail traffic within the State in paper, vellum, and parchment, just as some foreign nations do with tobacco; it is obvious that it might thus fix on paper a price far exceeding its value in open market, and fully equal to a stamp tax, and thereby enhance the cost of all written contracts, including bills of lading, invoices, and marine policies; but in what just sense could this be called either a regulation of commerce between the States or a duty on exports?

The great cause of the present alarming crisis in public affairs is the disposition to which men are so prone of construing the Constitution, instead of reading it; of trenching on the rights of States by interpretation, instead of respecting as sacred all such as are not plainly and expressly prohibited.

Now, this power of taxation by a State is that which was most jealously watched, and apprehensions in relation to a check on its exercise formed the chief objection urged against the adoption of the Constitution. The history of all the State Conventions shows this.

The precise point in this case seems to be covered by the very language of the Chief Justice in the passenger cases. Speaking of the State, he says: ·

"They are expressly prohibited from laying any duties on imports or exports, except what may be absolutely necessary for executing their inspection laws. So far their taxing power over commerce is restrained, but no farther. They retain all the rest; and if money demanded is a tax upon commerce, or the instrument or vehicle of commerce, it furnishes no objec-

tion to it, unless it is a duty on imports, [or exports,] or a ton-nage duty, for these alone are forbidden."

7 Howard, 480.

The argument on this whole subject, however, has been so completely exhausted in the various adjudications of this court, with which its members are thoroughly familiar, that nothing more could be required than the simple reference to them already made; and on them the State of California rests her case.

Mr. Chief Justice TANEY delivered the opinion of the court.

The only question in this case is upon the constitutionality of a law of California, imposing a stamp tax upon bills of lading.

By an act passed by the Legislature of that State to provide a revenue for the support of the Government from a stamp tax on certain instruments of writing, among other instruments mentioned in the law, a stamp tax was imposed on bills of lading for the transportation from any point or place in that State, to any point or place without the State, of gold or silver coin, in whole or in part, gold-dust, or gold or silver in bars or other form; and the law requires that there shall be attached to the bill of lading, or stamped thereon, a stamp or stamps, expressing in value the amount of such tax or duty.

By a previous law upon the same subject it was made a misdemeanor, punishable by fine, to use any paper without a stamp, where the law required stamped paper to be used.

After the passage of these acts, Almy, the plaintiff in error, being the master of the ship Ratler, then lying in the port of San Francisco, and bound to New York, received a quantity of gold-dust for transportation to New York, for which he signed a bill of lading upon unstamped paper, and without having any stamp attached to it. For this disobedience to the law of California he was indicted in the Court of Sessions for a misdemeanor, and at the trial the jury found a special verdict setting out particularly the facts, of which the above is a brief summary; and upon the return of the verdict the counsel for the defendant moved for a judgment of acquittal,

upon the ground that the law of California was repugnant to the Constitution of the United States. But the court decided that the State law was not repugnant to the Constitution of the United States, and adjudged that Almy should pay a fine of $100 for this offence. And the Court of Sessions being the highest court of the State which had jurisdiction of the matter in controversy, this writ of error is brought to revise that judgment.

We think this case cannot be distinguished from that of Brown *v.* the State of Maryland, reported in 12 Wheat., 419. That case was decided in 1827, and the decision has always been regarded and followed as the true construction of the clause of the Constitution now in question.

The case was this: The State of Maryland, in order to raise a revenue for State purposes, among other things required all importers of certain foreign articles and commodities enumerated in the law, or other persons selling the same by wholesale, before they were authorized to sell, to take out a license, for which they should pay $50; and in case of refusal or neglect, should forfeit the amount of the license tax, and pay a fine of $100, to be recovered by indictment.

Brown, who was an importing merchant, residing in Baltimore, refused to pay the tax, and was thereupon indicted in the State court, which sustained the validity of the State law, and imposed the penalty therein prescribed. This judgment was removed to this court by writ of error, and it will be seen by the report of the case that it was elaborately argued on both sides, and the opinion of the court, delivered by Chief Justice Marshall, shows that it was carefully and fully considered by the court. And the court decided that this State law was a tax on imports, and that the mode of imposing it, by giving it the form of a tax on the occupation of importer, merely varied the form in which the tax was imposed, without varying the substance.

So in the case before us. If the tax was laid on the gold or silver exported, every one would see that it was repugnant to the Constitution of the United States, which in express terms declares that "no State shall, without the consent of Congress,

lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

But a tax or duty on a bill of lading, although differing in form from a duty on the article shipped, is in substance the same thing; for a bill of lading, or some written instrument of the same import, is necessarily always associated with every shipment of articles of commerce from the ports of one country to those of another. The necessities of commerce require it. And it is hardly less necessary to the existence of such commerce than casks to cover tobacco, or bagging to cover cotton, when such articles are exported to a foreign country; for no one would put his property in the hands of a ship-master without taking written evidence of its receipt on board the vessel, and the purposes for which it was placed in his hands. The merchant could not send an agent with every vessel, to inform the consignee of the cargo what articles he had shipped, and prove the contract of the master if he failed to deliver them in safety. A bill of lading, therefore, or some equivalent instrument of writing, is invariably associated with every cargo of merchandise exported to a foreign country, and consequently a duty upon that is, in substance and effect, a duty on the article exported. And if the law of California is constitutional, then every cargo of every description exported from the United States may be made to pay an export duty to the State, provided the tax is imposed in the form of a tax on the bill of lading, and this in direct opposition to the plain and express prohibition in the Constitution of the United States.

In the case now before the court, the intention to tax the export of gold and silver, in the form of a tax on the bill of lading, is too plain to be mistaken. The duty is imposed only upon bills of lading of gold and silver, and not upon articles of any other description. And we think it is impossible to assign a reason for imposing the duty upon the one and not upon the other, unless it was intended to lay a tax on the gold and silver exported, while all other articles were exempted from the charge. If it was intended merely as a stamp duty on a particular description of paper, the bill of lading of any

other cargo is in the same form, and executed in the same manner and for the same purposes, as one for gold and silver, and so far as the instrument of writing was concerned, there could hardly be a reason for taxing one and not the other.

In the judgment of this court the State tax in question is a duty upon the export of gold and silver, and consequently repugnant to the clause in the Constitution hereinbefore referred to; and the judgment of the Court of Sessions must therefore be reversed.