# THE CARSON RIVER LUMBERING COMPANY *v.* ROBERT PATTERSON.

COMMERCE AMONG STATES.—The several States have no power to pass laws regulating commerce among themselves, but, by the eighth section of the first Article of the Constitution of the United States, that power is vested exclusively in Congress.

IDEM.—The imposition of an impost in the shape of a toll on logs and lumber floated down a stream from one State into another, for the purpose of raising revenue for the State by which the toll is imposed, is not a police regulation, but is an attempt to regulate commerce.

POWER OF STATE TO IMPOSE TOLL.—A State has no power to pass a law imposing a toll on lumber and logs floated down a stream from that State into an adjoining State.

NOTE GIVEN FOR ILLEGAL TOLL.—A promissory note given for the release of property seized for a toll imposed by a State law on logs and lumber floated down a stream from that State into another State, is without consideration and void.

APPEAL from the District Court, Sixeenth Judicial District, Alpine County.

The complaint was on a promissory note reading as follows :

" Due Robert Patterson the sum of nineteen hundred dollars ($1,900), in gold coin, in ten days from date, for value received.   May 29th, 1866.

                    " CARSON RIVER LUMBERING COMPANY.
" By A. M. CROW, Superintendent."

The defendant in the answer admitted the execution of the note, but averred that it was given without consideration, as they were engaged in cutting logs and firewood in the County of Alpine, State of California, and transporting the same down the Carson River from Alpine County to the markets of Gold Hill and Virginia City, in the State of Nevada, for sale; and that during the winter of 1865 and 1866, and up to March 22d, 1866, it had cut a large quantity of saw logs and firewood for the purpose of floating the same down the river for sale.

That the Legislature of the State of California during its session of 1865 and 1866 passed an Act, which was approved by the Governor on the 22d day of March, 1866, authorizing

the Board of Supervisors of the County of Alpine to charge and collect a toll for floating and transporting saw logs and cordwood on said river; under and by virtue of said Act the said Board of Supervisors appointed Robert Patterson the Collector of said tolls.

That defendant had been informed by its attorneys and counsel, H. Cook and N. Bennett, and believed it true, and therefore charged the fact to be so, that said Act so passed by the Legislature as aforesaid was unconstitutional, and repugnant to the Constitution of the United States, and void; that the land on and along both sides of the East Fork of the Carson River, and the soil over which it flowed, belonged to the Government of the United States, and was a part of the public domain. That said Board of Supervisors had fixed the toll at one dollar per thousand feet for floating saw logs on said river, and seventy-five cents per cord for cordwood; that said plaintiff, as such Collector, claimed and demanded of defendant four thousand dollars, as due for toll, which defendant refused to pay, for the reason that no such amount was at the time due for tolls; but the said plaintiff then and there seized and attached all the saw logs and cordwood belonging to said defendant in Alpine County, and all its other personal property in said county, amounting in value to about $30,000, and held the same to satisfy the sum of $4,000, stopped its men from work, and stopped its drive, and thereby compelled said defendant to pay and make arrangements with him, said planitiff, in order to get their wood and saw logs released by plaintiff, that it might go on with its drive, or suffer great and irreparable loss.

That the defendant executed and delivered the note in order to get its property released by plaintiff as such Collector, and not for any value received or debt or obligation.

The plaintiff demurred to the answer, the Court below sustained the demurrer, and gave judgment for plaintiff, and the defendant appealed.

The other facts are stated in the opinion of the Court.

*H. Cook,* and *Nathaniel Bennett,* for Appellant.

The note was given under duress of personal property, and the authorities show that an instrument thus given cannot be enforced. (*Harmony* v. *Bingham,* 2 Kern. 100, and authorities cited, particularly *Chase* v. *Dwinal,* 7 Greenl. 134, cited on p. 112 and again on p. 117, which was a case where money was paid to liberate a raft of lumber, detained in order to exact illegal toll. And see, also, statement of facts in case of *Lin Sing* v. *Washburn,* 20 Cal. 535; *Burnett* v. *Sacramento,* 12 Cal. 76–82.)

The Act is in violation of that clause of section eight of Article I of the Constitution of the United States, which gives the power to Congress *to regulate commerce among the several States.* The lumbering company carries on a trade between the States of California and Nevada, and the Act in question is in restraint of that trade. The entire business of the company consists of an inter-State trade. And although Congress has not passed any law affecting the subject matter with which this Act comes in conflict, yet it seems to us that the Act cannot be upheld consistently with the general relations of the States to each other under the Union. (*Lin Sing* v. *Washburn,* 20 Cal. 534; *The People* v. *Downer,* 7 Cal. 169; *Brumagim* v. *Tillinghast,* 18 Cal. 265; *Almy* v. *State of California,* 24 How. U. S. 169.)

*J. G. McCullough,* for Respondent.

How far has the State the right to control such streams as the Carson River—to adopt regulations governing the local trade thereon? For as to such streams and the proper measures to be adopted, the Legislature must, in a very large measure, be the exclusive judge; and having once come to the conclusion that a case exists in which it is competent for the Legislature to make a law on the subject, this Court will not examine critically the minor provisions of the Act. Does the Act attempt to regulate commence between the States?

This stream has never been declared navigable by the Legislature. As said in the Indiana case, hereafter cited, if we resort to the map for information, indications do not favor the national character of this stream; our general information is not such as to enable us to say historically that the East Fork of the Carson is an *inter-State navigable* stream. We never yet heard of a vessel clearing from any port or town or place in Nevada, and discharging its cargo on the Carson in this State, or that there ever was any port on the stream; nor, if navigable, has Congress ever passed any law regulating the lumber trade on this stream, or ever made any appropriations for the improvement of the navigation thereon. It has never passed any Act to control State legislation over such streams as this. The defendants claim under no right or privilege set up under any Act of Congress. The Supreme Court of the United States held, in the *Blackbird Creek Case*, that the Act of the Legislature of Delaware, which authorized a dam across a small navigable stream, was constitutional.

At least in the absence of congressional interference, the State jurisdiction over such streams as this is supreme, so far as they are within her territorial limits, and this Act is confined in its provisions to that part of the stream in Alpine County. The Legislature may authorize bridges to be built, dams to be erected, tolls to be charged, and is the judge when they are expedient and what disposition is to be made of the tolls. It is to judge what is and what is not an improvement; whether it will improve at all or obstruct; what is conducive to the general good and promotive of the general welfare. The Legislature has the right to regulate the internal trade on such streams, and the duties prescribed by this Act are circumscribed by the boundaries of Alpine County. The trade is local in its nature and extent.

We rely on the following authorities as sustaining the validity of the Act of the Legislature in question : *Depew* v. *Wabash and Erie Canal*, 5 Ind. 10–12; *Glover* v. *Powell*, 2

43

Stock. Ch. 211, 223–28; *Boykin* v. *Shaffer,* 13 La. 129–31; *Commissioners, etc.* v. *Withers,* 29 Miss. 37–40; *Willson* v. *Blackbird Co.,* 2 Peters, 245–52; *Penn* v. *Wheeling Bridge Co.,* 13 How. 566, 582, 585, 586, 599, 600; *Veazie* v. *Moore,* 14 How. 568; *Commonwealth* v. *Alger,* 7 Cush. 102; *Wadsworth* v. *Smith,* 11 Me. 278, 281, 282; *Commonwealth* v. *Breed,* 4 Pick. 463; *United States* v. *Bedford Bridge,* 1 Wood. & Min. 410; *Kellogg* v. *Union Co.,* 12 Conn. 24; *Thames Bank* v. *Lovell,* 18 Conn. 501.

By the Court, Shafter, J.:

The principal question in this case is as to the constitutionality of an Act of the Legislature, approved March 22d, 1866, and entitled "An Act granting to the Board of Supervisors of Alpine County the right to charge and collect toll for the floating and transportation of wood, saw logs and lumber down the main Carson River, in said county." (Acts 1865–6, p. 350.)

The Act "places" the main Carson River in the County of Alpine, "under the supervision and control of the Board of Supervisors of the county, for the purposes of the Act." The Board is authorized "to grant or license the use of said river for the floating, driving or transporting firewood, saw logs, and lumber down said stream at a rate of toll not to exceed the sum of one dollar for each cord of firewood, one dollar for each thousand feet of lumber, and one dollar for each thousand feet of saw logs. Provision is made for the enforcement of this law through a "Toll Collector," who is authorized, in case of neglect or refusal on the part of any one using the stream to pay the prescribed toll, to seize the wood, etc., or any other personal property of the defaulter, and to summarily sell the same to satisfy the toll, together with costs and expenses. The Act makes it a misdemeanor, punishable by fine, or imprisonment, for any one to use the river for the purposes stated without a license from the Board of Supervisors. The money arising from the tolls is to be

paid into the treasury of the county—seventy-five per cent to the credit of the General Fund, and the residue to the credit of the Common School Fund.

This action is brought upon a promissory note for one thousand nine hundred dollars, given by the company to the plaintiff—toll gatherer for the time being—for tolls claimed by him to be due under the Act.

The answer of the defendants alleges, amongst other things, that the tolls covered by the note accrued on saw logs and cordwood cut by the company upon public lands of the United States, situated on both sides of the East Fork of the Carson River, in the County of Alpine, for the purpose of floating the same on said river to the markets of Empire City, Gold Hill and Virginia City, in the State of Nevada; that the company had used said Fork for floating wood and timber to those markets since the year 1861, and had expended large sums of money in improving the river; that the wood on which the tolls in question were claimed had been seized by the plaintiff under the Act of 1866, and that the note was given to procure a release from the seizure.

The unconstitutionality of the Act of 1866 is put in argument, upon a number of grounds, but the only one we shall have occasion to discuss is that, so far as the Act may be regarded as applicable to the lumber traffic between California and Nevada, on the line of the Carson River, it is an attempt to regulate commerce between those States.

By the eighth section of the first Article of the Constitution of the United States, Congress is empowered " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." It has been considered that the power " to regulate commerce " is the power to prescribe the rule by which it shall be governed; and that " commerce," in the sense in which the word is used in the Constitution, is coextensive in its meaning with " intercourse." In so far as intercourse between two States consists in traffic, a rule prescribing the subjects of that traffic, or dictating the mode in which or the conditions on which such

traffic must be prosecuted, is a commercial regulation beyond dispute. (*Gibbons* v. *Ogden*, 9 Wheat. 194.) It was further held in that case that the power to regulate commerce, whether foreign or domestic, is exclusive of the same power in the States, and not concurrent with it; and the same point was ruled in *Brown* v. *Maryland*, 12 Wheaton, 419. The question was met in this State at an early day, and it was held that the power to regulate commerce among the States was vested exclusively in Congress. (*People* v. *Downer*, 1 Cal. 169.)

It is not claimed, nor can there be any pretence for claiming, that the Act whose constitutionality is brought in question in this action is a police regulation. It has no bearing upon public health, public morals or public safety. It was passed for the sole purpose of raising revenue off of a portion of the traffic between California and a sister State, a commerce in which both States were and are alike interested, and the control of which is vested in the General Government alone, the common superior of both.

But the attempt to regulate inter-State commerce in this case is by an impost on wood and lumber, considered as an export from California; and the power to regulate commerce between the States in that particular way is prohibited to the States by an express provision of the Constitution. The toll imposed by the terms of the Act for the use of the river, though different in form from a duty or tax on the wood or lumber transported, is in substance the same thing. (*Almy* v. *The State of California*, 24 How. 174; *Brumagim* v. *Tillinghast*, 18 Cal. 266.)

It is urged on the part of the plaintiff that the statute of 1866 was intended to act only upon that portion of the river lying in California, and never was intended to impose a toll upon lumber and wood seeking a market in Nevada. If that is the true construction of the Act, then on the allegations of the answer the plaintiff in seizing the wood of the company exceeded his powers, and the note is void as having been obtained by duress of goods. But it is apparent, on

inspection, that the toll is imposed by the Act on all lumber floated down the stream, irrespective of its destination.

On these grounds the judgment is reversed and the cause is remanded for trial on the issues of fact.

Mr. Justice Sawyer did not express an opinion.