*75 The opinion of the Court was delivered by
Dunkin', O. J.
There are certain principles so frequently recognized as to have become axioms. It is familiarly said that the power of taxation is an inherent right of sovereignty and is indispensable to its continued existence. Half a century since, Chief Justice Marshall, in McCulloch vs. Maryland, (4 Wheat. 425,) uses this language: “ That the power of taxation is one of vital importance ; that it is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments; are truths that have never been denied.”
He then shows that the sovereignty of the State in the article of taxation maybe controlled by the Constitution— that it is “ within the capacity of the Constitution to withdraw any subject from the action of this power.” How far it has been controlled by that instrument must be a question of construction. And again, in Weston vs. City Council, (2 Pet. 466,) “The power of taxation is one of the most essential to a State, and one of the most extensive in its operations. The attempt to maintain a rule, which shall limit its exercise, is undoubtedly one of the most delicate and difficult duties which can devolve on those whose province it is to expound the supreme law of the land in its application to the cases of individuals.” In the same spirit is the language used by the Courts of our State, in Berney vs. Tax Collector, (2 Bail. 673.) In our complicated system of Government, “ It cannot be but that difficulties and collisions will arise, which would not occur under a more simple form of polity. Something must be left to mutual moderation and forbearance, and the sense of mutual interest,” and there is cited with approbation, '‘the distinction of the Federalist between a'direct, necessary and inevitable conflict of powers, and one that is. *76 merely consequential, casual, and mitigated ; that it is not a mere possibility of inconvenience in tbe exercise of powers, but an immediate constitutional repugnancy, that can by implication, alienate and extinguish a pre-existing-right of sovereignty.” (Federalist, No. 32.)
In December, 1866, the Legislature passed the usual annual Act for raising supplies. It is thereby declared that “a tax for the sums and in the manner hereinafter mentioned, shall be raised and paid into the treasury of the State.” First are enumerated the taxes, on articles ad va-lorum, such as real estate, &c., the capital stock of gaslight companies, &c., &c. Then follows this clause: “Upon all gross incomes derived from the following sources, there shall be paid a tax of the per cent, herein specified on the aggregate amount received between 1st of January, 1866. and 1st of January, 1867, to wit: From employments, faculties, and professions, &c., two dollars on every hundred dollars. On commissions received by brokers, vendue masters/commission merchants, &c., five dollars on every hundred dollars. On the gross amount of premiums received by insurance companies, two dollars on every hundred dollars. On the gross amount of the receipts of express companies, ten dollars on every hundred dollars, to be paid to the treasurer of the State.”
On tbe part of the relator it is stated that the Southern Express Company is “ engaged in the transportation, for hire, of moneys, goods, wares, and merchandise, and other articles of value for commercial purposes, from the various States of the United States of America to the State of South Carolina, and from the said State of South Carolina to the other States of the United States, and from several parts of the State of South Carolina to other parts of the same State, and through the said State in transitu, to and from other States. That the business of tbe Company consists solely in the transportation aforesaid, and that its only receipts *77 are tbe freights and charges paid for such transportation, and that it has no other source of income whatsoever.”
Whereupon it is insisted on the part of the relator that the said clause is a violation of the 8th see. 1st Art. of the Constitution of the United States, which declares that “ Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes,” and that, in pursuance of said power, Congress had, by the Internal Revenue Act of 1861, enacted that “any person, firm, company, or corporation, carrying on or doing an express business, shall be subject to, and pay a duty of,, three per centum on the gross amount of all the receipts of such express business.”
One of the principles enunciated by Chief Justice Marshall, as of universal acceptation, is that the power of taxation, originally inherent in the States, ‘‘is not abridged by the grant of a similar power to the Government of the Union, and that it is to be concurrently exercised by the two Governments.” Sut the Internal Revenue Act of 1864, as well as that of 1866, expressly provide that’no tax levied by those Acts, shall preclude the States from similar taxation for their own purposes. The subject was very, fully discussed in the Supreme Court of the United States, in the license tax cases; (5 Wall. 462,) and Pervear vs. Commonwealth; (Id. 475.) Adverting to the Act of 1866, which had substituted a special tax “ for license” — the Chief Justice, in the former case says: “ this judicious legislation has removed all future possibility of the error which has been common among persons engaged in particular branches of business'that they obtained from the licenses, under the internal revenue laws, an authority for carrying on the licensed business independently of State regulation and control, and it throws, moreover, upon the previous legislation all the light of a declaratory enactment.” It was in that case authoritatively adjudicated that “the *78 recognition bjtbe Acts of Congress of tbe power and rights of the States to tax, control or regulate any business carried on within its limits is entirely consistent with an intention on the part of Congress to tax such business for national purposes.” And in Pervear vs. Commonwealth, it was ruled that “a law of a State, taxing a business, already taxed by Congress, is not unconstitutional.”
It is then urged that the Act is in violation of the 10th Section of the same Article of the Constitution, which provides that: “ No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws,” &c. To sustain the position, the authority of Brown vs. Maryland, (12 Wheat. 419,) and Almy vs. California, (24 How. 169,) has been invoked. But in both these cases the Court proceed on the principle that the Act of the Legislature was an evasion of the inhibition in the Constitution. “ The words of the prohibition,” says Mr. Marshall, “ ought not to be pressed’to their utmost extent. Sound principles of construction ought to restrain all Courts from carrying the words of the prohibition beyond the object the Constitution is intended to secure; there must be a point of time when the prohibition ceases, and the power of the State to tax commences. While the goods remain the property of the importer, in his warehouse, in the original form or package in which they were imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the Constitution.” But, in that, and in several subsequent cases, it has been declared that when the goods have become incorporated and mixed up with the mass of property in the country, they lose their distinctive character as imports : and so in Almy vs. California; “ In the case now before the Court,” says Mr. Chief Justice Taney, "the intention to tax the exports of gold and silver, in the form of a tax on the bill of lading, is too plain to be mistaken. The duty is *79 imposed on bills of lading of gold and silver, and not upon articles of any other description, and we think it impossible to assign a reason for imposing a duty upon the one and not upon the other, unless it was intended to lay a tax on the gold and silver exported, while all other articles were exempted from the charge.” The Act was consequently adjudged to be repugnant to the Constitution.
In the Passenger Cases, (7 How. 422,) the same Chief Justice, after stating the express prohibition on the States, says: “ So far their taxing power over commerce is restrained, but no farther. They retain all the rest, and if money demanded is a tax upon commerce, or the instrument or vehicle of commerce, it furnishes no objection to it, unless it is a duty on imports, (or exports,) or a tonnage duty, for these alone are forbidden.”
It is urged in argument, however, that the tax upon the receipts of the Express Company is “a charge upon the' act of bringing articles into the State, — upon the transportation of articles into the State,” and hence upon “the articles as imports.”
It appears to the Court that this interference, if it exists, is entirely too remote and incidental to invalidate the Act. “ The conflict with the powers of Congress to render an Act of the State void, must be a direct, necessary and irreconcilable conflict of power, and not one that is merely consequential, casual and mitigated.” That there was no such intention on the part of the Legislature is transparent, on reviewing the provisions of the Act.
It purports to be a tax on gross incomes, and express companies are enumerated in the same category with professional men, brokers, vendue masters, commission merchants, dealers in exchange, (foreign or domestic,) as well as the gross amount of premiums received by insurance companies. To all these, the argument urged on behalf of the relators may be applied, with more or less force. The *80 tax on the business in which they deal is a burthen upon the articles which they buy or sell, many of which came from foreign parts, or from sister States. The tax renders them more onerous and costly, and by direct consequence, increases the price of the article to the consumer. “ They are taxes ” (in the language of the argument) “ indirectly upon the articles, but acting immediately upon their value,” and upon this construction the income of each and all of these parties is withdrawn from the taxing power of the State, and in this manner (as has been elsewhere said) a single inhibition may be expanded, by remote conse-sequences, over the whole face of civil society. The tax of 1866 is substantially, as it purports to be, an income tax, and all within the jurisdiction of the State, or whose property is protected by its authority, are bound to pay it. But if it be regarded (in the language of the license cases) merely as a convenient mode of “imposing taxes on several descriptions of business, and of ascertaining the parties from whom such taxes are to be collected,” it is equally within the legitimate authority of the State, and not justly obnoxious to the charge of conflicting with the powers of the national legislature.
The Court has not been put in possession of the execution, the enforcement of which is sought to be enjoined, or prohibited. The relator declined to make a return of the gross receipts of the Express Company, and the assessment was necessarily, in some degree, speculative. But the suggestion sets forth that the receipts of the Express Company are, in some part, the property of other companies, domiciled and doing business entirely beyond the limits of this State — that this company collects simply the freights due to such companies, and accounts to them for the moneys so received. It is then suggested that the assessment on the relator is, in part, on such receipts. The Court is of opinion that such is not the proper interpretation of the Act of *81 1866. The gross receipts are snob as the Southern Express Company receive for themselves, and not as agent for others. It is part of the business of the company to receive from the consignees of goods the price of the articles, which are delivered by the express company, and account for the proceeds to the proper parties. For this they may charge a commission, for which they are properly assessed, but not on the gross amount collected for others, whether residents abroad or in this State. Nor does it make any difference that such third parties are express companies, doing like business with themselves, in other States. It is further suggested, that the business of the company extends to the States of "Virginia, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Tennessee, Kentucky, and extending to the city of Cairo, in the State of Illinois, and to the city of Washington, in the District of Columbia. A large part of their gross receipts consists of receipts for the freights and charges of transportation of railroads and steamboats, the usual and ordinary common carriers of the country, which are received by the relator, and paid, and disbursed to the said common carriers — that the relators "do not own or possess any of the vehicles, or means of transportation aforesaid, except wagons, carriages, and the horses, mules and harness pertaining thereto, and other necessaries for the delivery of the moneys, goods, wares and merchandise, and other articles of value so transported, after their arrival at the place of destination, by means of the common carriers aforesaid.”
After careful consideration of the terms of the Act, and with more hesitation, the Court has concluded that these receipts are not within the purview of the enactment. This conclusion is strengthened by the observation that, in the same clause of the Act, a tax of “ one per cent, is imposed on the gross income of all railroads” in the State, including, of course, that part of their income thus col *82 lected and paid by tbe express companies, and thereby (in any other view) subjecting tbe same amount received to be twice taxed, a construction not to be adopted but on imperative necessity.
The remaining objection to the Act is of a general nature, to wit, that the tax imposed is "oppressive, prohibitory, and unequal.”
“ The power of taxation,” says Chief Justice Marshall, “is not confined to the people and property of a State. It may be exercised upon every object brought within its jurisdiction. -It is essential to the very existence of government, and may be legitimately exercised on the subjects to which it is applicable to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself.”
As the exigencies of government cannot be limited, so no limit is prescribed to the power of taxation, the people resting confidently on the interest of the legislator, and on the influence of the constituents over their representatives, to guard them against its abuse. “ By recognizing this principle, Courts are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power.” (4 Wheat. 425.) So in Bank of Commerce vs. Newark Co., (2 Black, 620,) if within constitutional limits, the taxing power “ cannot be controlled or restrained by the Court, the prudence of its exercise not being a judicial question.” And it is elsewhere said, “that in the absence of any express restriction by the Constitution, discrimination in the tax must rest in the discretion of the Legislature. The power to discriminate or not is in the State. The Court is not a fit tribunal to sit in judgment upon the question, whether the Legislature of a State has exercised its taxing power wisely or unwisely over objects of taxation confessedly within its discretion.” There is, *83 and must always be, a considerable latitude of discretion in every wise government, in tbe exercise of the taxing power, both as to the object and the amount, and of discrimination in respect to both. If, as in the case of the State vs. Allen, (2 McC. R. 55,) the Legislature, under the guise of a tax, impose a penalty, the Act is palpably obnoxious to the § 2, 4 art. Constitution, and consequently inoperative and void, &c. As was said in the license cases, there “ are undoubtedly fundamental principles of morality and justice which no Legislature is at liberty to disregard, but it is equally undoubted, that no Court, except in the clearest cases, can properly impute the disregard of these principles to the Legislature.”
It may be impolitic to impose this burthen upon a branch of industry so useful as that of the express companies; but the policy of the measure is exclusively and properly for the consideration of a different department of the Government. Should the express companies be wholly exempt from taxation, or in what proportion, as compared with other institutions, should they contribute to the support of the Government ? Manifestly these are not subjects for judicial inquiry; nor do the Courts possess the necessary lights to determine whether the power has been judiciously exercised.
In the judgment of this Court, neither the Act of the' Legislature, nor the ordinance of the City Council of Charleston, are in contravention of the Constitution of the United States, or of the State of South Carolina. Assuming that the executions issued are in conformity with the Act and ordinance as hereinbefore expounded by this Court, it is ordered that the appeal be dismissed.
Wardlaw, A. J., Glover, J., MuNro, J., Carroll, Ch., Inglis, A. J., Moses, J., Dawkins, J., and Lesesne, Oh., concurred; JOHNSON, Ch., was absent at hearing.

Motion dismissed.