## L. L. HIGGINS ET AL V. SELIM RINKER.

TAXATION—CONSTITUTIONAL LAW.—The general tax law of 1873 provided, among other things, "that there shall be levied and collected from every person, firm, or association, pursuing any of the following-named occupations, an annual tax (except when herein otherwise provided) on every such occupation or separate establishment, as follows, viz: For selling spirituous, vinous, malt, and other intoxicating liquors, in quantities less than one quart, two hundred dollars: *Provided*, That this section shall not be so construed as to include wines or beer manufactured in this State, or when sold by druggists for medicinal purposes: *And provided further*, That this section shall not be so construed as to authorize

druggists to sell spirituous or intoxicating liquors, except alcohol." Appellants procured an injunction to restrain the tax collector from collecting an occupation tax levied on them for selling spirituous, vinous, malt, and other intoxicating liquors in quantities less than a quart, alleging that the wines and malt liquors sold by them were not of Texas manufacture.

    1. That the statute is repugnant to the fourth paragraph of the eighth section of the first article of the Federal Constitution and to the second paragraph of the tenth section of the same article.

    2. DISCUSSED.—The case of Welton v. The State of Missouri, 1 Otto, U. S. Rep. S. C., 275, discussed, and the conclusion arrived at, that if there be any difference in the statute of the State of Missouri, which gave rise to that decision, and the statutes of Texas under which the taxes complained of were levied, it is in degree and not in principle.

    3. The fact that appellants were engaged in selling spirituous liquors, as well as vinous, malt, and other intoxicating liquors not the product of the State, and that there is no pretense that the law makes any distinction as to spirituous liquors, cannot affect the question involved. It would be otherwise if the court could separate the constitutional from the unconstitutional part of the statute, so as to give effect to the former without doing violence to the intention of the Legislature; but the tax for the license is indivisible. The license is for the exercise of a single and individual occupation, though different articles may be sold by those to whom license is granted, and the courts cannot, without exercising legislative powers, say that the same amount should be paid for selling spirituous liquors as for selling spirituous, vinous, and malt liquors.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

The syllabus states the case.

L. E. Trezevant, for appellants.—The tax in question is a tax upon the things that are sold, to wit, vinous and malt liquors not of the manufacture of this State, and spirituous liquors, and is not a tax upon the occupation. We can no more cut out terms, or mitigate their legal effect because they are in a proviso, than we can qualify the terms of a private agreement because found in one part of an instrument instead of another. (Dugan v. Bridge Co., 27 Penn.

St., 310; Wayman v. Southard, 10 Wheat., 30; Voorhees v. Bank of U. S., 10 Peters, 449; Rawls v. Kennedy, 23 Ala., 248; Peoree v. Bank of Mobile, 33 Ala., 702; Mayor of Cumberland v. Magruder, 34 Md., 381.) In other words, as stated by the Supreme Court of the United States, "where the business or occupation consists in the sale of goods, the license tax required for its pursuit is, in effect, a tax upon the goods themselves." (Welton v. The State of Missouri, 1 Otto, 275.)

"Such an exaction, called by what name it may be, is a tax upon the goods themselves." (Ward v. Maryland, 12 Wall., 429; Erie R. R. Co. v. The State, 2 Vroom, (N. J.,) 531; Crow v. The State, 14 Mo., 237; Livingstone v. City of Albany, 41 Ga., 21; The State v. North, 27 Mo., 467.)

The effect of the act in question, which alone, and not its purpose, is to be considered in this connection, (State Freight Tax, 15 Wall., 276, per Strong, J.,) is to discriminate against those liquors constituting in part the subject of the tax, which are not of the manufacture of this State. This discrimination is made, whatever guise it may assume, or by whatever name it may be called.

If this can be done with reference to liquors, it can be done with reference to all the products of a sister State, and in this mode one State can establish a complete system of non-intercourse in all her commercial relations with all the other States of the Union. (Hinson v. Lott, 8 Wall., 148; Welton v. The State of Missouri, 1 Otto, 275.)

A State tax upon a licensed trader within an Indian reservation, held to be a regulation of commerce, and unconstitutional. (Foster v. County Commissioners, 7 Minn., 140.)

This doctrine cannot be better stated than is stated by Mr. Cooley in his recent Treatise on the Law of Taxation, p. 62.

Nor is the tax in question obnoxious alone to the commercial clause of the Constitution. Under a power to levy a discriminating tax between domestic and foreign products, commerce may not only be regulated, but, indirectly, a duty may be laid on imports, in violation of art. 1, sec. 10, clause

2, of the Constitution of the United States, prohibiting any State from laying imposts or duties on imports or exports. In laying a tax, discriminating against the imports from foreign nations or the sister States, a duty is as effectually laid as though the tax had been demanded before the importation was allowed. What is the difference between collecting the tax before the import is admitted, and singling it out from all others, after it has been admitted, and subjecting it to the same tax because of its foreign character?

If a State cannot lay a discriminating tax on goods after their importation, it cannot do it indirectly—as, by requiring of every dealer in goods which have been imported, to take out a license, for which a tax is imposed, since this mode or form of tax is but a tax upon the goods themselves. (State *v.* North, 27 Mo., 467; see opinion of Bradley, in Ward *v.* Maryland, 12 Wall., 432.)

Appellee urges, however, that, as to spirituous liquors, there is no discrimination, and that to that extent there is no unconstitutionality in the act, and the tax should be sustained.

The answer to this is, that the taint of unconstitutionality is in the tax, or in the act imposing it, and there is no cure for it. The tax is none the less a regulation of commerce because one of the constituent parts of the subject of the tax does not feel the discrimination, or does not come within the regulation.

If the tax did not discriminate against foreign wines and beer, but was imposed upon spirituous, vinous, and malt liquors, whether foreign or domestic, there would be no discrimination, and no regulation of commerce, and there would be no resistance to the tax.

To sustain the tax because one, and one only, of the constituent parts of the subject of the tax is not included within the discrimination, would be improper, for two reasons:

*First.* Because it would be to sustain an evasion of the constitutional provisions.

*Second.* It would be judicial legislation.

"If the act was divisible, if it acted upon different objects," say our Supreme Court, in The State v. Swisher, 17 Tex., 449, "it might be held unconstitutional in part, and free from that objection as to other parts. But we do not regard the act as susceptible of division. Its whole object and action is upon restraining the sale of liquors in less quantities than one quart, and it must all fall together."

Where the different portions of a statute form inseparable parts of the same system, the whole is invalidated by the unconstitutionality of a part. (People v. Detroit, 29 Mich., 108, (Cooley, J.;) People v. Omnibus R. R. Co., 33 Cal., 212; Oatman v. Bond, 15 Wis., 28; Campau v. Detroit, 14 Mich., 276; State v. Easterbrook, 3 Nev., 180; Lathrop v. Mills, 19 Cal., 513; State v. Perry Co., 5 Ohio St., 497; Potter's Dwarris, 249; Cooley's Const. Lim., 178; Sedg. on Stat. and Const. Law, 414.)

The rules of construction under which a statute may be held good in part and bad in part, do not apply, and cannot be invoked in the construction of the act in question, because the act is not susceptible of division into parts, one part of which is independent of and disconnected from the other parts, but is an integer. Where a statute is clearly made up of parts, sections, or provisions, one part will not be held good and another bad, unless the respective parts are independent of each other. (5 Ohio St., 507; Potter's Dwarris, 249.) The constitutional part may stand, if, by rejecting the unconstitutional part, the object and effect of the law is not destroyed. (3 Nev., 180.) If, when the unconstitutional part is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. (Cooley's Const. Lim., 178; Washington v. The State, 13 Ark., 763.)

*Robert M. Franklin*, also for appellants.—"If, when the unconstitutional part is stricken out, that which remains is

complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." (Cooley's Const. Lim., 178.)

"In the case of all written laws, it is the intent of the lawgiver that is to be enforced." (Cooley's Const. Lim., 55; Sedgwick, 194.)

The above rule, as expressed by Judge Cooley, gives the key to the judicial inquiry as to when a law unconstitutional in part can be sustained as to the remainder. If no part of the law can be upheld without doing violence to the apparent legislative intent, then the law must be declared unconstitutional as a whole. Can we strike out any part of this section imposing a tax upon persons pursuing the occupation of selling spirituous, vinous, malt, and other intoxicating liquors, without giving the law a different intention and effect from that intended by the Legislature? Strike out the proviso, and we do violence to the legislative intent by taxing homemade wines and beers, and the court might find some difficulty in enforcing its legislation. Strike out all of the law from which the discrimination arises—that is, all parts referring to wines and beers, or their synonyms, vinous and malt liquors—and the remaining law would, in entire disregard of the legislative intent, exempt foreign wines and beers, and impose the whole tax on spirituous liquors, which comprise very little over one half the property which the Legislature design to reach. No part of this section can be stricken out without changing the apparent legislative intent of the act; no part can be omitted without leaving the remainder a different law, with a different effect; therefore we hold there is no independent part to be sustained.

*Sayles & Bassett,* also for appellants.—It is not competent for the court to reject the proviso, for that would be making laws, and not construing them. The proviso is legitimately used for the purpose of taking special cases of the general

enactment, and providing specially for them; (Minis v. United States, 15 Peters, 423;) it is a declaration of the legislative intent not to tax wine and beer the product of this State, and it would defeat that intent for this court to impose the tax on those articles.

On the contrary, if you exempt from taxation wine and beer, the manufacture of other States, you declare what the Legislature did not intend to do, and what they did not have in consideration in fixing the amount of the tax.

The object and effect of the statute is, to demand a license for the sale of spirituous, vinous, and malt liquors, the two latter not being the manufacture of this State, and to require no license for the sale of wine and beer, the manufacture of this State, and that the whole provision must stand or fall together; "that its purpose is to accomplish a single object;" that its provisions are so mutually connected with and dependent on each other as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect, the Legislature would not have passed the residue independently; and as some of its parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them. (Cooley's Const. Lim., 178.)

And to the same effect are the decisions in other States. (Fisher v. McGinn, 1 Gray, 1.).

*Ballinger, Jack & Mott*, for appellee.

I. This is not a tax on commerce in any fair legal, sense. It is an occupation tax upon the citizens of the State pursuing certain vocations—selling spirituous, vinous, malt, and other intoxicating liquors—retail liquor dealers. All such are required to pay the annual tax. The proviso simply indicates the legislative definition of retail liquor dealers, and excludes from the reach of the rule the sale of wines or beer manufactured in this State. In other words, a man may have his own vineyard and sell his own wine, the product of such vineyard,

without being designated and taxed as a retail liquor dealer. It seems entirely competent for the Legislature to make such distinction. It is right in law, and sound in policy.

II. The law does not, necessarily, discriminate against importations. There is no tax upon importers as such. Liquors, wines, and beer may be brought into the State freely, and without tribute. This fulfills the requirements of the Constitution of the United States. But after the original packages are broken, after the articles have been mixed with and are parts of the general property of the citizens of the State, then the law of the State reaches them, and the Legislature properly makes their sale and use sources of revenue to the State. To deny this power is to countenance a doubtful and dangerous doctrine.

And herein lies the marked distinction between the case at bar and that of Welton v. State of Missouri, (1 Otto, 275,) by which the appellants have been mainly misled.

III. This is a revenue law. Its purpose is to raise funds by a system of taxation for the support of the State Government and the county municipalities. Its title, language, and provisions mean this, and nothing more. Retail liquor dealers are required to contribute a certain sum for this purpose, in the nature of an annual occupation tax. Parties selling home-made wine or beer are not included in the term liquor dealers, and are, accordingly, not taxed as such. Of course, however, such wine or beer is taxed as property. This provision is merely an incident to the law—no part of its general scope and purpose. It was not intended to discriminate to the prejudice of imported wines and beer. It constitutes no such protective system as that which the Constitution of the United States forbids. It is rather a police regulation, pertaining to internal matters of State policy, about which Congress has, rightfully, no concern.

And yet, because of this incidental and immaterial proviso, appellants seriously claim that the whole law is unconstitu-

tional, and that the entire tax system must go by the board. They forget the maxim that the law despises trifles. ·

IV. Should the court hold that the proviso in the law is obnoxious to the Constitution of the United States, and, accordingly, not to be sustained, then it is submitted that the proviso itself should fall, and the law should stand. The provision complained of is not an essential part of the law. The statute, as a tax law, is complete without it. If the proviso is unconstitutional, that fact does not authorize the court to annul the law, which is entirely independent of the proviso. Being distinct and separate, the law is good and valid, although the exception may be bad.

In support of these several positions, we respectfully refer to the following authorities: Cooley on Taxation, 62, 63; Brown v. Maryland, 12 Wheat., 419–437; Waring v. Mayor, 8 Wall., 110; Woodruff v. Parham, 8 Wall., 123; Low v. Austin, 13 Wall., 29; Kenney v. Harwell, 42 Ga., 416; Willard v. People, 5 Ill., 470; Mayor v. Dechert, 32 Md., 369; State v. Swisher, 17 Tex., 449; Cooley's Const. Lim., 3d ed., 176–8; Commonwealth v. Clapp, 5 Gray, 100; McCulloch v. State, 11 Ind., 432; People v. Hill, 7 Cal., 97; Campbell v. Union Bank, 6 How., Miss., 625; M. & O. R. R. Co. v. State, 29 Ala., 573; Canto v. State, 2 Iowa, 165; State v. Wheeler, 25 Conn., 290; People v. Lawrence, 36 Barb., 190.

MOORE, ASSOCIATE JUSTICE.—The objections made by appellants to the validity of the taxes brought in question in this case are, that the law by which they are levied, is repugnant to the fourth paragraph of the eighth section of the first article of the Constitution of the United States, which gives to Congress the power to regulate commerce with foreign nations, and among the several States and Indian tribes, and also to the second paragraph of section ten of said article, prohibiting any State from laying imposts or duties on imports or exports. And we feel constrained to hold, in conformity to the ruling of the Supreme Court of the United

States in regard to statutes having similar provisions as that in the statute levying these taxes, that these objections must be sustained, though this conclusion is contrary to our own judgment as to the construction which should be given to the provisions of the Constitution of the United States referred to, and the statute by which these taxes are levied, or, rather, as to their proper relation and bearing upon each other.

The line of decisions in the Supreme Court of the United States, which has finally led to the ruling by which we think we are controlled, if we are to follow its decisions upon such subjects, which now seems to be too firmly settled to admit of controversy, began with the case of Brown *v.* Maryland, 12 Wheat., 419. In that case it was held, that an act of the Legislature of the State of Maryland requiring importers of foreign goods to pay a State license tax before selling such goods in the original form and packages in which they were imported, was a duty or tax upon imports, and could not be imposed by the State; that a tax upon the occupation of an importer was a tax upon importation; that it was impossible to conceal the fact that this mode of taxation was only varying the form without varying the substance.

In the subsequent cases of Almy *v.* California, 24 How., 169; Crandall *v.* Nevada, 6 Wall., 35; Woodruff *v.* Parham, 8 Id., 123; Ward *v.* Maryland, 12 Id., 418; Railroad Co. *v.* Pennsylvania, 15 Id., 232; Railway Co. *v.* Richmond, 19 Id., 589, and many others, the views expressed in the opinion of the court in Brown *v.* Maryland have been sanctioned and approved. And in some of them a still more enlarged effect and greater control over State legislation is claimed to result from the provisions of the Constitution of the United States, which we have cited, than was insisted upon in that case. But in none of the cases decided by the Supreme Court of the United States, however, prior to the case of Welton *v.* State of Missouri, 1 Otto, 275, is there, in our opinion, an

authoritative ruling of the court, decisive of the precise question presented by this case.

The statute of the State of Missouri, which gave rise to the case of Welton *v.* State, declared that persons who deal in goods, wares, and merchandise, not the growth, produce, or manufacture of the State, by going from place to place to sell them, are peddlers, and as such are required to pay a license tax, while for the sale in the same manner of articles grown, produced, or manufactured within the State, no such tax is imposed. The Supreme Court of Missouri held, as we think correctly, that the law simply imposed a tax upon an occupation; that the amount of it was not regulated by the value of the property or the amount of business transacted by the party upon whom it was levied; and hence it could not be regarded, in any proper sense, as a tax upon property; that it made no attempt to regulate inter-State commerce, and could not be justly held to discriminate against the products of other States. (55 Mo., 288.)

But an entirely different view was taken of the statute by the Supreme Court of the United States.

It was said by that court, when the case came before it, "that the power which insures uniformity of commercial regulation must cover the property from hostile or interfering legislation until it has become a part of the general property of the country, and subject like it to similar protection, and to no greater burthens. If, at any time before it has become incorporated into the mass of property of the State or nation, it can be subject to any restrictions by State legislation, the object of investing the control in Congress may be entirely defeated. If Missouri can require a license tax for the sale, by traveling dealers, of goods which are the growth, produce, or manufacture of other States or countries, it may require such license tax as a condition of their sale from ordinary merchants, and the amount of the tax will be a matter resting exclusively in its discretion."

"The power of the State to enact a license tax of any

amount being admitted, no authority would remain in the United States or in this court to control its action, however unreasonable or oppressive. Imposts, operating as an absolute exclusion of the goods, would be possible; and all the evils of discriminating State legislation, favorable to the interest of one State and injurious to the interest of other States and countries, which existed previous to the adoption of the Constitution, might, and the experience of the last fifteen years shows, would follow, from the action of some of the States."

And the court, referring to the difficulty of drawing the line precisely where the commercial power of Congress ends and the power of the State begins, which had been recognized in Brown v. Maryland, say:

"Following the guarded language of the court in that case, we observe here, as was observed there, that it would be premature to state any rule which would be universal in its application, to determine when the commercial power of the Federal Government over a commodity has ceased and the power of the State has commenced. It is sufficient to hold now, that the commercial power continues until the commodity has ceased to be the subject of discriminating legislation by reason of its foreign character. That power protects it, even after it has entered the State, from any burthens imposed by reason of its foreign origin. The act of Missouri encroaches upon this power in this respect, and is, therefore, in our judgment, unconstitutional and void."

If there is a difference between the act of Missouri and that by which these taxes are levied, the best reflection which we have been able to give to them leads us to the conclusion that it is in degree, and not in principle. We, therefore, as has been said, feel ourselves constrained to hold, that the statute under which the taxes complained of by appellant were levied, is unconstitutional and void.

It is insisted by appellee that, as appellants admit that they are engaged in the occupation of selling spirituous liquors,

as well as that of selling vinous, malt, and other intoxicating liquors not the product of this State, and, as there is no pretense that the law makes any discrimination as to spirituous liquors, they have no cause to complain. This would be unquestionably true, if the court could separate the constitutional from the unconstitutional part of the statute, so as to give effect to the former, without doing violence to the intention of the Legislature. But the tax for the license is indivisible. The license is for the exercise of a single and indivisible occupation, though different articles may be sold by persons to whom a license is granted; and we cannot, without exercising legislative power, say that the same amount should be paid for the selling of spirituous liquors as for the selling of spirituous, vinous, and malt liquors.

The judgment is reversed and the cause remanded to the District Court.

REVERSED AND REMANDED.

[A rehearing was granted March, 1876.]