NICHOLS COPPER CO. *v.* UNITED STATES [1]

United States Customs Court, Second Division

(Decided August 2, 1938)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard E. Fitz-Gibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties

---

[1] C. D. 26.

alleged to have been improperly exacted on an importation of copper ore imported from Cuba. A tax was assessed under section 601 (c) (7) of the Revenue Act of 1932 at the rate of 4 cents per pound on the copper contained in said ore.

The protest alleges that—

\* \* \* The said copper ore, being a product of Cuba, is free of duty and free under the Internal Revenue Act of 1932, in accordance with Section 316 of the Tariff Act of 1930, and Section 601-A of the Revenue Act of 1932. Copper ore was free of duty under the Act of 1907 and comes within the reciprocal treaty between the United States and Cuba, concluded on December 11, 1902.

The plaintiff offered no evidence in support of its claim, but submitted the case on the official papers. Therefore, the only question before us is one of law as to whether the copper ore in question is entitled to free entry under the Cuban treaty of December 11, 1902, considered in conjunction with section 316 of the Tariff Act of 1930, and section 601 (a) of the Revenue Act of 1932.

Said section 316 reads as follows:

SEC. 316. CUBAN RECIPROCITY TREATY NOT AFFECTED.

Nothing in this Act shall be construed to abrogate or in any manner impair or affect the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or the provisions of the Act of December 17, 1903, chapter 1.

Section 601 of the Revenue Act of 1932 reads as follows:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States unless treaty provisions of the United States otherwise provide.

\*     \*     \*     \*     \*     \*     \*

(c) There is hereby imposed upon the following articles sold in the United States by the manufacturer or producer, or imported into the United States, a tax at the rates hereinafter set forth, to be paid by the manufacturer, producer, or importer:

\*     \*     \*     \*     \*     \*     \*

(7) Copper-bearing ores \* \* \* 4 cents per pound on the copper contained therein: *Provided*, That no tax under this paragraph shall be imposed on copper in any of the foregoing which is lost in metallurgical processes: *Provided further*, That ores or concentrates usable as a flux or sulphur reagent in copper smelting and/or converting and having a copper content of not more than 15 per centum, when imported for fluxing purposes, shall be admitted free of said tax in an aggregate amount of not to exceed in any one year 15,000 tons of copper content. \* \* \*

The pertinent provisions of said Cuban treaty of December 11, 1902, which was approved by the Congress by the act of December 17, 1903 (33 Stat. 3; U. S. C. title 19, sections 124 and 125), read:

*Article I*

During the term of this convention, \* \* \* all articles of merchandise being the product of the soil or industry of the Republic of Cuba which are now

imported into the United States free of duty, shall continue to be so admitted by the respective countries, free of duty.

\*       \*       \*       \*       \*       \*       \*

*Article IX*

In order to maintain the mutual advantages granted in the present convention by the United States to the Republic of Cuba and by the Republic of Cuba to the United States, it is understood and agreed that any tax or charge that may be imposed by the national or local authorities of either of the two countries upon the articles of merchandise embraced in the provisions of this convention, subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported.

The tariff act in force at the time of the enactment of said Cuban treaty was the Tariff Act of 1897. Paragraph 629 of the free list of said Tariff Act of 1897 reads as follows:

Ores of gold, silver, copper, or nickel, and nickel matte; sweepings of gold and silver.

A somewhat similar question was before the United States Court of Customs and Patent Appeals in the case of *Faber, Coe & Gregg (Inc.)* v. *United States*, 19 C. C. P. A. 8, T. D. 44851. That case involved the question of the dutiable classification of certain cigars imported from Cuba into the United States in November 1927. Duty was levied thereon by the collector of customs at the port of New York at $4.50 per pound and 25 per centum ad valorem under paragraph 605 of the Tariff Act of 1922, less 20 per centum by virtue of the provisions of section 320 of said act and the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902.

Shortly after the importation was entered the importer purchased from the collector of internal-revenue stamps in payment of the tax provided by section 400 of the Revenue Act of 1926 (U. S. C. title 26, section 832), and such stamps were affixed to the imported merchandise and canceled by customs officials while the merchandise was in customs custody, in accordance with the provisions of U. S. C. title 26, section 845.

The importer filed two protests, one within sixty days after the purchase of the stamps from the collector of internal revenue and prior to liquidation, and the other within sixty days after the liquidation of the entries. In each of said protests the importer claimed that it was entitled to a reduction of 20 per centum of the sum paid for the revenue stamps, no contention being made that the duties assessed under paragraph 605 of the Tariff Act of 1922 were unlawfully assessed.

The Third Division of this court, from whose decision said appeal was taken, had held that the internal-revenue tax under the Revenue Act of 1926 was not a customs duty; that the payment of such tax

did not involve a charge or exaction made by the collector of customs; and that this court had no jurisdiction in the premises. In the course of its opinion the appellate court said:

Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. *Brown* v. *State of Maryland*, 12 Wheat. 419; *Almy* v. *California*, 24 How. 169; *Robbins* v. *Shelby County*, 120 U. S. 489; *May* v. *New Orleans*, 178 U. S. 496; *Fairbank* v. *United States*, 181 U. S. 283; *United States* v. *Shallus & Co.*, 9 Ct. Cust. Appls. 168, T. D. 37999; *Porges & Levy* v. *United States*, 10 Ct. Cust. Appls. 244, T. D. 38575; *Batjer & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726; *Shaw & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 226, T. D. 38990; *Arden* v. *United States*, 13 Ct. Cust. Appls. 42, T. D. 40879.

\* \* \* \* \* \* \*

Having concluded that the involved taxes are customs duties, although additional to and separate from the primary or regular duties provided by the Tariff Act of 1922, the next question requiring our consideration is the right of appellant to protest under the provisions of section 514 of the Tariff Act of 1922.

\* \* \* \* \* \* \*

Section 514 of the Tariff Act of 1922 provides that—

All decisions of the collector, including the legality of all orders and findings entering into the same as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his liquidation of any entry, \* \* \* shall be final and conclusive upon all persons, unless the importer, consignee, or agent \* \* \* shall, within sixty days after, but not before such liquidation or decision,

file a protest in writing.

The collector had authority to refuse delivery of the imported merchandise until the involved duties were paid and the required revenue stamps affixed to the merchandise. He is required by statute to determine the amount of those duties for the purposes hereinbefore mentioned. We are of opinion that those questions were involved in the collector's liquidation of the entries; that the importer had the right to protest against such liquidation; and that the customs court had, and, on appeal, this court has, jurisdiction to dispose of the issues raised by the importer in protest 276974–G, filed after liquidation.

\* \* \* \* \* \* \*

It was provided in Article I of the treaty that all products of the soil or industry of the United States, which were then imported into the Republic of Cuba free of duty, and all products of the soil or industry of the Republic of Cuba, which were then imported into the United States free of duty, should continue to be so admitted by the respective countries.

Article II provides that during the operation of the treaty all products of the soil or industry of the Republic of Cuba, imported into the United States, not covered by Article I, "shall be admitted at a reduction of twenty per centum of the rates of duty thereon as provided by the Tariff Act of \* \* \* 1897, or as may be provided by any tariff law of the United States subsequently enacted."

\* \* \* \* \* \* \*

Then, with full knowledge of the imposition by the laws of the United States of internal-revenue taxes on cigars and other products produced in the United States, and the application of such laws and taxes to like products imported into the United States from foreign countries, subsequent to their importation and

prior to their entering into the commerce of the country, the contracting parties provided in Article IX of the treaty that—

it is understood and agreed that any tax or charge that may be imposed by the national or local authorities of either of the two countries *upon the articles of merchandise embraced in the provisions of this convention, subsequent to importation and prior to their entering into consumption in the respective countries, shall be imposed and collected without discrimination upon like articles whencesoever imported.* [Italics ours.]

It will be observed that, although Article VIII provides that the rates of duty "herein granted" shall continue preferential in respect to like imports from other countries, Article IX provides that any *tax* or *charge* imposed by the United States on the products of the Republic of Cuba, *subsequent to their importation and prior to their entering into consumption,* shall be imposed and collected *without discrimination* upon like articles imported from other countries.

The provisions of Article IX relate to all articles, whether dutiable or free of duty, included within the provisions of the treaty, and to all taxes imposed by the United States on the products of the Republic of Cuba *subsequent to their importation and prior to their entering into consumption.*

In view of the fact that, generally, customs duties become a lien on imported merchandise at the moment of its arrival within the limits of a port of entry, and, as taxes imposed on imported merchandise, while it retains its "distinctive character" as an import, are customs duties, regardless of whether they are imposed at the time of importation or subsequent thereto, it is obvious that the contracting parties intended to distinguish between the regular tariff duties (made preferential in respect to all like imports from other countries, Articles II and VIII) and other additional taxes, including additional customs duties, imposed on *imported merchandise subsequent to its importation and prior to its entering into consumption* (required by Article IX to be "imposed and collected without discrimination upon like articles whencesoever imported"), and to provide that, as to the regular tariff duties, the rates therein provided should continue preferential in respect to all like imports from other countries, whereas the additional taxes, including additional customs duties, should be imposed and collected *without discrimination* upon like articles whencesoever imported.

Accordingly, we are of opinion that appellant is not entitled to a reduction of 20 per centum of the additional customs duties imposed by U. S. C., title 26, section 845, and section 400 of the Revenue Act of 1926, U. S. C., title 26, section 832, *supra,* and we so hold.

The underlying principle of this decision of the Court of Customs and Patent Appeals was reaffirmed by said court in the case of *Faber, Coe & Gregg, Inc.* v. *United States,* customs appeal 4109, T. D. 49638, the decision in which was rendered March 28, 1938. In the latter case the appellate court held that the plaintiff was not entitled to a reduction of 20 per centum of the revenue tax assessed, by virtue of the reciprocal trade agreement with the Republic of Cuba entered into on August 24, 1934. In our opinion these two cases are here controlling.

We therefore hold as a matter of law that the reciprocal treaty between the United States and the Republic of Cuba of December 11, 1902, does not apply to the tax of 4 cents per pound imposed by section 601 (c) (7) of the Revenue Act of 1932 on the copper contained in the copper ore imported herein. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.