### UNITED STATES v. ALBERT STEINFELD & CO. et al.

(District Court, D. Arizona.  December 1, 1913.)

#### No. C 705.

1. NEUTRALITY LAWS (§ 5*)—VIOLATION—PLACE OF COMMISSION—VENUE.

An indictment for violating Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, in that defendants made and caused to be made a certain shipment of munitions of war from New Haven, Conn., to Tucson, Ariz., from which they were to be shipped to Mexico, showed that the offense, if any, was committed in Connecticut and not in Arizona; the gist of the offense being the shipment of the goods and not the mere ordering thereof nor the delivery to defendants at a point within the jurisdiction of the court, to be transshipped abroad.

[Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

2. NEUTRALITY LAWS (§ 5*) — VIOLATION — MUNITIONS OF WAR — SHIPMENT — CONGRESSIONAL RESOLUTION—CONSTRUCTION.

Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, prohibiting the violation of neutrality by shipment of munitions of war procured in the United States and exported to an American country in which conditions of domestic violence exist, does not prohibit the shipment of munitions of war from one point in the United States to another, but only from a point in the United States to a point in a foreign country; and hence an indictment merely alleging that defendants caused to be made a shipment of munitions of war from New Haven, Conn., to Tucson, Ariz.,

to be there transshipped to the state of Sonora, Mexico, as its ultimate destination, merely charged an intent to violate the law, and was therefore fatally defective.

. [Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

3. CONSTITUTIONAL LAW (§ 304*)—NEUTRALITY LAWS (§ 5*)—VIOLATION—INDICTMENT—SHIPMENT OF ARMS—DESTINATION—JUDICIAL NOTICE.

Where an indictment for violating Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, in the shipment of munitions of war from the United States for use in Mexico, alleged that the material was shipped by defendants from New Haven, Conn., to Tucson, Ariz., "with the state of Sonora in the United States of Mexico as the ultimate destination of said shipment," etc., the court would take judicial notice that the state of Sonora was a large country and not a place, and that it contained numerous cities, to any of which the shipment might have been made; and hence the indictment was fatally defective for failure to charge a "place" in Mexico to which the shipment was made.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 925–939, 941–949; Dec. Dig. § 304;* Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

Albert Steinfeld & Co. and others were indicted for violating Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630. On demurrer to the indictment. Sustained.

Joseph E. Morrison, U. S. Atty., of Bisbee, Ariz.

Thos. Armstrong, Jr., Geo. P. Bullard, Ernest W. Lewis, and L. T. Carpenter, all of Phœnix, Ariz., for defendants.

SAWTELLE, District Judge. The indictment in this case charges as follows:

"That Albert Steinfeld & Co., a reputed corporation, Hugo Donau, and Albert Steinfeld, on or about the 11th day of April, 1913, at the county of Pima, in the said district and within the jurisdiction of said court, did unlawfully, knowingly, willfully, and feloniously, and with intent to export the munitions of war hereinafter described from the United States of America to and into the United States of Mexico, make and cause to be made a certain shipment of munitions of war, to wit, twenty thousand cartridges of the caliber commonly known and designated as 30-30, that is to say, did make and cause to be made a shipment of said munitions of war from the city of New Haven, in the state of Connecticut, and with the state of Sonora, in the United States of Mexico, as the ultimate destination of said shipment, by then, at the city of Tucson, in the county of Pima, state and district of Arizona, transporting and causing the said munitions of war to be transported from said city of New Haven, in the state of Connecticut, over and upon the lines of certain common carriers to the grand jurors unknown, to the said city of Tucson, in the county of Pima, state and district of Arizona."

The indictment was intended to charge the defendants, and each of them, with a violation of the provisions of the Joint Resolution of March 14, 1912, No. 10, 37 Stat. at Large, p. 630, which is as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled: That the joint resolution to prohibit the export of coal or other material used in war from any seaport of the United States, approved April twenty-second, eighteen hundred and ninety-eight, be, and hereby is, amended to read as follows:

"That whenever the President shall find that in any American country conditions of domestic violence exist which are promoted by the use of arms or

munitions of war procured from the United States, and shall make procla-·
mation thereof, it shall be unlawful to export except under such limitations
and exceptions as the President shall prescribe any arms or munitions of
war from any place in the United States to such country until otherwise or-
dered by the President or by Congress.

"Sec. 2. That any shipment of material hereby declared unlawful after
such proclamation shall be punishable by fine not exceeding ten thousand
dollars, or imprisonment not exceeding two years, or both."

A demurrer has been interposed to said indictment, upon the
grounds: First, that it appears upon the face of the indictment that
the offense was committed in the state of Connecticut and not within
the state of Arizona or within the district of Arizona, and that this
court has no jurisdiction over the offense charged; and, second, that
said indictment fails to state facts sufficient to constitute a public
offense against any law of the United States of America.

In the opinion of this court, the indictment in this case is fatally
defective, for three reasons:

1. Because it appears upon the face of the indictment that the of-
fense charged was not committed within the district of Arizona and
within the jurisdiction of this court.

2. Because the indictment at most charges a mere intent to ship the
munitions of war into the state of Sonora in the United States of Mex-
ico, the forbidden territory, and a mere intent to ship the munitions of
war into the forbidden territory is not an offense under the resolution.

3. Because the indictment fails to specify any point of destination
within the forbidden territory to which the alleged shipment of muni-
tions of war was made, and thereby fails to give the defendants notice
of the crime with which they are charged and to enable them to plead
a conviction under this indictment in bar of a subsequent indictment
for the same offense.

[1] I. The indictment charges that the defendants made and caused
to be made a certain shipment of munitions of war from the city of
New Haven in the state of Connecticut, to the city of Tucson in the·
state and district of Arizona, thus showing that the initial point of the
shipment was the city of·New Haven in the state of Connecticut, and
not the city of Tucson in the state of Arizona.

The shipment of the goods is the thing forbidden by the statute,
and not the mere ordering of a shipment to be made, if, indeed, an
order was made, as does not clearly appear; and as the term "ship-
ment" means the act of shipping anything, or the act of putting the
thing to be shipped on board of the means of transportation, it seems
clear that the initial point of this shipment was New Haven, Conn., and
not Tucson, Ariz., and, such being the case, it is plain that the juris-
diction of the initial point of the offense alleged was in the District
Court of the United States for the District of Connecticut, rather
than in the District Court of the United States for the District of
Arizona.

Furthermore, if this offense is to be construed as one of those of-
fenses deemed to be begun in one place and ended in another (Act
March 3, 1911, c. 231, 36 Stat. at Large, § 42, p. 1100 [U. S. Comp.
St. Supp. 1911, p. 148]), so that the defendants might be indicted and

tried by the court having jurisdiction of either the initial or the terminal point of the shipment, then the defendants in this case could not be indicted and tried by this court, because the initial point of the shipment was in New Haven, Conn., and the terminal point would be the final, or, as is alleged in the indictment, the ultimate destination of the shipment in the state of Sonora, in the United States of Mexico; and the mere fact that the goods were delivered to the defendants at a point within the jurisdiction of this court could not make this alleged offense indictable here within the jurisdiction of this court, unless it could be held that the defendants could be indicted and tried at any point in any district where the goods might happen to be landed, or through which they might happen to pass in course of transit between New Haven, Conn., and Tucson, Ariz., which would be a manifest absurdity.

[2] II. When the indictment in this case is reduced to its last analysis, it is apparent that all that is charged against the defendants is the mere intent to ship the munitions of war from Tucson, Ariz., into the state of Sonora, United States of Mexico, the forbidden territory. The indictment, it is true, charges that the defendants caused the munitions of war to be shipped from New Haven, Conn., to Tucson, Ariz.; but the shipment of munitions of war from one point in the United States of America to another point within the United States of America cannot within itself be deemed to be an offense under the joint resolution of Congress quoted above, because that resolution distinctly makes the shipping of the forbidden goods from some point in the United States into the forbidden territory an offense, and nowhere does it prohibit the shipping of the goods from one point in the United States to another point in the United States, no matter how near the point of destination within the United States may be to the forbidden territory; so that, when this indictment is stripped of the surplusage which it contains, it charges nothing on its face except the intent to ship the goods into Mexico.

A careful examination of the joint resolution of Congress above referred to discloses no provision, either in its express terms or which could follow from necessary implication, that the mere intent to ship the goods into the forbidden territory should be deemed an offense under the resolution, and, so long as the defendants confine themselves to mere intent, they are guilty of no offense under the resolution; it is only when they put that intent into effect by causing an actual shipment to be made from some point in the United States to some point within the forbidden territory—that is, within the United States of Mexico—that they become chargeable with an offense.

Then, under the law as laid down in the case of United States v. Chavez, 228 U. S. 525, 33 Sup. Ct. 595, 57 L. Ed. 950, from the very moment when a shipment is started from any point in the United States to a point within the forbidden territory, the act forbidden by the joint resolution of Congress becomes an offense under that resolution and is punishable accordingly; but, so long as the mere intent is not coined into an act of actual shipment made from a point in the United States to a point within the forbidden territory, no offense has

been committed. A careful examination of the Chavez Case above referred to bears out this idea.

In the Chavez Case, the defendant started with the munitions of war on his person, intending to deliver them at a definite point within the forbidden territory, to wit, the city of Juarez, Mexico, and was stopped on the way at a point in the city of El Paso somewhere between the initial and terminal points of the shipment; but, as a matter of fact, it appears in that case that the munitions of war were put on their final shipment and were actually in transit to and into the city of Juarez, in the United States of Mexico, when the defendant in that case was arrested.

In the case at bar, it nowhere appears that the intent to ship the munitions of war into the United States of Mexico was ever coined into an act of actual shipment; but, on the contrary, it is manifest from the indictment that the munitions of war were shipped from New Haven, Conn., to Tucson, Ariz., and there the shipment stopped, and it does not appear from the indictment that the munitions of war were ever shipped from Tucson, Ariz., or from any other point, into the forbidden territory; consequently it is manifest that the indictment charges only the mere intent to reship the forbidden goods from Tucson, Ariz., into the forbidden territory, and nothing more, and, as this mere intent is not an offense under the joint resolution, the indictment is bad in this particular and cannot be sustained.

[3] III. The indictment in this case does not name any point of destination within the forbidden territory to which it attempts to charge that the shipment of munitions of war in question was alleged to have been made. It merely charges that a shipment was made from New Haven, Conn., to Tucson, Ariz., with the state of Sonora, in the United States of Mexico, as its ultimate destination. It thus appears that the indictment, in failing to name a point of destination within the forbidden territory, is lacking in "that degree of certainty which is required in criminal pleadings in order to notify the defendant, as well as the court, of the nature of the offense charged and to enable the defendant to plead any judgment which may be rendered in the case as a bar to subsequent prosecution for the same offense." 10 Enc. P. & P. p. 473.

This indictment, naming no place of destination of the shipment, and no person or persons to whom the shipment is alleged to have been consigned, would place the defendants at an unfair disadvantage, because it would fail to give them that certain notice of the offense charged to which they are entitled, and a conviction or acquittal of the defendants had under this indictment could not be pleaded in bar to a subsequent indictment charging the same offense in the same general and indefinite way.

This court takes judicial knowledge that the state of Sonora is a large country and not a place, that it contains numerous cities and towns of various sizes, among which are Nogales, Cannanea, Hermosillo, Agua Prieta, Guaymas, Magdalena, and Empalme, to any of which, as well as to any of the many other places in the said state, shipment might have been made, and the shipment to any of such places would be covered by the indictment at bar.

The ordinary course of business is that, when goods or merchandise or anything of value is shipped from one place to another, a bill of lading is made out for the goods, and the goods are in some way labeled with the name of the person to whom they are consigned and the destination to which they are to be shipped, and it is hardly conceivable that any sane person would ship munitions of war or anything else of value from a point in the United States to "the state of Sonora," in the United States of Mexico, or to any other country, without causing a bill of lading for the goods to be made out, and the goods labeled with the name of the consignee and the point of destination; and, if these defendants actually caused a shipment to be made of the munitions of war in question to the United States of Mexico, it is hardly conceivable that they would have made such a shipment without having made it to some certain consignee at some definite destination, and, if this had been done, it could and should have been so charged in the indictment.

In the case of Almy v. State of California, 65 U. S. (24 How.) 174, 16 L. Ed. 644, the Supreme Court of the United States said:

"A bill of lading, or some written instrument of the same import, is necessarily always associated with every shipment of articles of commerce from the ports of one country to those of another. The necessities of commerce require it. And it is hardly less necessary to the existence of such commerce than casks to cover tobacco, or bagging to cover cotton, when such articles are exported to a foreign country; for no one would put his property in the hands of a shipmaster without taking written evidence of its receipt on board the vessel, and the purpose for which it was placed in his hands. The merchant could not send an agent with every vessel, to inform the consignee of the cargo what articles he had shipped, and prove the contract of the master if he failed to deliver them in safety. A bill of lading, therefore, or some equivalent instrument of writing, is invariably associated with every cargo of merchandise exported to a foreign country."

During the argument of this demurrer, the United States Attorney avowed that in drawing the indictment in this and other similar cases he took the indictment in the case of the United States v. Chavez, supra, as his model. Since the indictment in the Chavez Case charges a shipment of munitions of war made to the city of Juarez, Mexico, a definite place of destination within the forbidden territory, and the indictment in the case at bar merely charges a shipment of munitions of war made with the state of Sonora, a large country and not a place, as its ultimate destination, it appears that the pleader did not follow his model in this particular in this indictment, and it becomes pertinent to inquire why he did not do so. Under these circumstances, it seems reasonable to assume that, if the pleader did not charge the place of ultimate destination in the state of Sonora, he did not do so because he could not, and he could not do it because he did not know what the destination was; and if he did not know what it was, and still did not charge that the place of destination was to the grand jury unknown, he must have done so because no shipment had actually been put on its final transit towards and into the forbidden territory, and there was in fact no shipment made and hence no place of ultimate destination within the state of Sonora.

In this connection, it should be observed that the indictment charges that the ultimate destination was the state of Sonora, and that the word "ultimate" was interlined in the original indictment, thus showing that the pleader of necessity had it in mind that the shipment made from New Haven to Tucson was not the final shipment, and that the munitions of war in question were to be afterwards reshipped, from Tucson or some other place, across the border into the state of Sonora, and therefore that the shipment charged in the indictment was merely from one place in the United States of America to another place in the United States of America, and not in the state of Sonora, as the indictment apparently charges, and consequently that the indictment in fact charges no overt act of illegal shipment done in connection with the mere naked intent charged.

It should also be observed that in holding that a definite destination of the shipment should have been named in the indictment, or else that the indictment should have charged that the destination of it was to the grand jury unknown, this court intends to go no further than the United States Supreme Court tacitly went in upholding the indictment in the Chavez Case on this point, and does not intend to hold or even to intimate that allegations charging the giving of a bill of lading and the naming of a consignee are necessary ingredients of an indictment of the kind under consideration here; but what has been said and quoted above regarding a consignee and a bill of lading has been used merely for the purpose of showing the necessity of having a definite place of destination of a shipment of munitions of war or goods of any other kind in commercial transactions of every sort, where a shipment is alleged.

The demurrer will be sustained, and the indictment will be quashed and dismissed. A judgment accordingly will be entered.