UNITED STATES v. PHELPS–DODGE MERCANTILE CO. et al.

(District Court, D. Arizona. December 1, 1913.)

No. C 697.

1. NEUTRALITY LAWS (§ 5*)—VIOLATION—SHIPMENT OF MUNITIONS OF WAR—INDICTMENT.

Since a mere intent to ship munitions of war from a point within the United States into the United States of Mexico is not a violation of Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, unless such intent is coupled with an actual shipment made from a definite point in the United States to a definite point in Mexico, an indictment charging that defendants, unlawfully, etc., and with intent to export munitions of war from the United States to and into Mexico, made and caused to be made a shipment of cartridges from Douglas, Ariz., to the state of Sonora in the United States of Mexico as the ultimate destination, by then and there transporting and causing such munitions of war to be transported by wagons and by express and railroad transportation from the store buildings of defendant hardware company in the city of Douglas, Ariz., to the store buildings of a mercantile company in the city of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bisbee, state of Arizona, merely alleged an intent to violate the resolution and was demurrable.

[Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

2. NEUTRALITY LAWS (§ 5*)—VIOLATION—MUNITIONS OF WAR—SHIPMENT TO MEXICO—INDICTMENT—ULTIMATE DESTINATION—DESIGNATION.·

An indictment for violating Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, in the shipment of munitions of war from the United States to Mexico, merely alleging the state of Sonora in the United States of Mexico as the ultimate destination of the shipment, was fatally defective for failure to specify a definite point of destination within the forbidden territory or to charge that the point of destination in the state of Sonora in the United States of Mexico was to the grand jury unknown.

[Ed. Note.—For other cases, see Neutrality Laws, Cent. Dig. §§ 14–17; Dec. Dig. § 5.*]

The Phelps-Dodge Mercantile Company, a corporation,· and the Douglas Hardware Company, a corporation, and certain others, were indicted for violating Neutrality Resolution March 14, 1912, No. 10, 37 Stat. 630, in that they participated in a shipment of munitions of war intended for use in the Mexican revolution. On demurrer to the indictment. Sustained.

Joseph E. Morrison, U. S. Atty., of Bisbee, Ariz.

Doan & Doan, of Douglas, Ariz., for Douglas Hardware Co.

Ellinwood & Ross, of Bisbee, Ariz., and Reese M. Ling, of Phœnix, Ariz., for Phelps-Dodge Mercantile Co., W. H. Brophy, and F. E. Coles.

SAWTELLE, District Judge. The indictment in this case contains two counts. The charging part of the first count thereof is as follows:

"That Phelps-Dodge Mercantile Company and Douglas Hardware Company, reputed corporations, and W. H. Brophy, F. E. Coles, and W. F. Fisher, on or about the 15th day of May, A. D. 1913, in the said district and within the jurisdiction of this court, did unlawfully, knowingly, willfully, and feloniously, and with intent to export the munitions of war hereinafter described from the United States of America to and into the United States of Mexico, make and cause to be made a certain shipment of munitions of war, to, wit, fifty thousand (50,000) cartridges of the caliber commonly known and designated as 7–M–M, that is to say, did make and cause to be made a shipment of said munitions of war from the city of Douglas, in the county of Cochise, state and district of Arizona, and with the state of Sonora, in the United States of Mexico, as the ultimate destination of said shipment, by then, at the city of Douglas, in the county of Cochise, state and district of Arizona, transporting and causing the said munitions of war to be transported, by means of horses and wagons and by express and railroad transportation in and over the railroad lines of the railroad commonly known and designated as the El Paso & Southwestern Railroad, from the store buildings of the said Douglas Hardware Company, in said city of Douglas, county of Cochise, state and district of Arizona, to the store buildings of the said Phelps-Dodge Mercantile Company, at the city of Bisbee, county of Cochise, state and district of Arizona."

The second count is identical with the first, except that it charges a shipment of 90,000 cartridges of the calibers commonly known and designated as 7–M–M and 30–30 from the store building of the Phelps-

Dodge Mercantile Company at Bisbee, county of Cochise, state and district of Arizona, and with the state of Sonora, in the United States of Mexico, as the ultimate destination of said shipment, by transporting said munitions of war by means of horses and wagon, from the store building and warehouse of the Phelps-Dodge Mercantile Company at Bisbee, to a point in the village of Bakersville, near the Bakersville Hotel, in the said county of Cochise, state and district of Arizona.

The indictment was designed to charge the defendants, and each of them, with a violation of the provisions of the Joint Resolution of March 14, 1912, No. 10, 37 Statutes at Large, p. 630, which is as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled: That the joint resolution to prohibit the export of coal or other material used in war from any seaport of the United States, approved April twenty-second, eighteen hundred and ninety-eight, be, and hereby is, amended to read as follows:

"That whenever the President shall find that in any American country conditions of domestic violence exist which are promoted by the use of arms or munitions of war procured from the United States, and shall make proclamation thereof, it shall be unlawful to export except under such limitations and exceptions as the President shall prescribe any arms or munitions of war from any place in the United States to such country until otherwise ordered by the President or by Congress.

"Sec. 2. That any shipment of material hereby declared unlawful after such a proclamation shall be punishable by fine not exceeding ten thousand dollars, or imprisonment not exceeding two years, or both."

A demurrer has been interposed to each count of the indictment, upon the grounds that neither count of said indictment states facts sufficient to constitute a public offense on the part of the defendants, or any of them, under the laws of the United States of America.

[1] It will be observed that the pleader has attempted to follow the form of indictment approved by the Supreme Court of the United States in the case of the United States v. Chavez, reported in 228 U. S. 525 et seq., 33 Sup. Ct. 595, 57 L. Ed. 950; but in my opinion the indictment in this case does not measure up to the indictment in the Chavez Case; and it is my opinion that the demurrer to the indictment in this case should be sustained, because, when the indictment is carefully considered, it is made manifest that the defendants are charged with the mere intent to ship the munitions of war in question into the forbidden territory, and nothing more, and because the indictment is fatally defective in that it does not name a place of destination of the shipment of the said munitions of war within the forbidden territory.

As I have stated in the case of United States v. Steinfeld & Company (No. C 705) 209 Fed. 904, decided at this term, and in which case demurrer was sustained to the indictment, I do not consider the mere shipping of munitions of war from one point in the United States of America to another point in the United States of America an offense under the joint resolution of Congress above referred to, and I do not consider the mere intent to ship goods from a point within the United States of America into the United States of Mexico an offense, unless that intent is coupled with an actual shipment made from a definite

point in the United States of America to a definite point in the United States of Mexico.

In the case of United States v. Chavez, above referred to, the offense charged was an actual shipment started from El Paso, Tex., to the city of Juarez, Mexico, and the defendant was carrying the munitions of war on his person and was arrested in the city of El Paso, after having started and while he was on his way to the city of Juarez. That case is not a parallel one to the case at bar, because in the case at bar the actual shipment charged was a shipment made from one point in the United States of America, and in the state of Arizona, to another point in the state of Arizona, and a careful study of the indictment reveals no actual shipment made from a point in Arizona to a point within the forbidden territory, and the mere intent to make a shipment of munitions of war cannot, in my judgment, be held to be an offense under the joint resolution of Congress in question, because that resolution nowhere makes it an offense, either directly or by necessary implication; and the Chavez Case, above referred to, as I construe it, does not so hold, because in the Chavez Case the intent which appears in the indictment was coupled with the actual shipment made from El Paso to the city of Juarez, while in the case at bar the intent stands alone and is coupled with no actual shipment save the shipment which was already made and previously ended.

[2] Furthermore, this indictment is bad in law, because it fails to specify a definite point of destination within the forbidden territory to which the shipment of munitions of war is alleged to have been made, or to charge that the point of destination in the state of Sonora, United States of Mexico, was to the grand jury unknown.

In the case of Almy v. State of California, 24 How. (65 U. S.) 174, 16 L. Ed. 644, to which I have already referred in my opinion in the case of United States v. Steinfeld & Company, the Supreme Court of the United States has made it very clear, if the opinion of any court on the point were necessary, that the course of business is that, when a shipment of goods is made from one country to another, a bill of lading is made out and the goods are shipped and consigned to some definite consignee at some definite point of destination.

It is not conceivable that the defendants in this case should have shipped the munitions of war in question into the forbidden territory without having shipped them to some definite consignee at some definite destination, and, if this had been done, the point of destination could and should have been alleged in the indictment, so as to give the defendants notice of the precise offense charged against them, and so that a conviction or acquittal under this indictment could be pleaded in bar to a subsequent indictment for the same offense charged in the same way.

During the argument of this demurrer, the United States attorney avowed that, in drawing the indictment in this and other similar cases, he took the indictment in the case of United States v. Chavez, supra, as his model. Since the indictment in the Chavez Case charges a shipment of munitions of war made to the city of Juarez, Mexico, a defi-

209 F.—58

nite place of destination within the forbidden territory, and the indictment in the case at bar merely charges a shipment of munitions of war made, with the state of Sonora, a large country and not a place, as its ultimate destination, it appears that the pleader did not follow his model in this particular in this indictment, and it becomes pertinent to inquire why he did not do so. Under these circumstances, it seems reasonable to assume that, if the pleader did not charge the place of ultimate destination in the state of Sonora, he did not do so because he could not, and he could not do it because he did not know what the destination was; and if he did not know what it was, and still did not charge that the place of destination was to the grand jury unknown, he must have done so because no shipment had actually been put on its final transit towards and into the forbidden territory, and there was in fact no shipment made, and hence no place of ultimate destination within the state of Sonora.

In this connection, it should be observed that the indictment charges that the ultimate destination was the state of Sonora, and that the word "ultimate" was interlined in the original indictment, thus showing that the pleader of necessity had it in mind that the shipment made from the city of Douglas to the city of Bisbee, or the shipment from the city of Bisbee to the village of Bakersville, was not in either case the final shipment, and that the munitions of war were to be afterwards reshipped, from Bisbee or Bakersville or some other point, across the border into the state of Sonora, and therefore that the respective shipments charged in the indictment were merely from one place in the United States of America to another place in the United States of America, and not in the state of Sonora, as the indictment apparently charges, and consequently that the indictment in fact charges no overt act of illegal shipment done in connection with the mere naked intent charged.

It should also be observed that in holding that a definite destination for each shipment should have been named in the indictment, or else that the indictment should have charged that such destination was to the grand jury unknown, this court intends to go no further than the United States Supreme Court tacitly went in upholding the indictment in the Chavez Case on this point, and does not intend to hold or even to intimate that allegations charging the giving of a bill of lading and the naming of a consignee are necessary ingredients of an indictment of the kind under consideration here; but what has been said and quoted above regarding a consignee and a bill of lading has been used merely for the purpose of showing the necessity of having a definite place of destination of a shipment of munitions of war or goods of any other kind in commercial transaction of every sort, where a shipment is alleged.

The demurrer will be sustained to each count, and the indictment will be quashed and dismissed, and judgment accordingly will be entered.